NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARISSA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.G., *Appellees*.

No. 1 CA-JV 15-0275
FILED 3-3-2016

Appeal from the Superior Court in Maricopa County
No.  JD527241
The Honorable Shellie F. Smith, Judge Pro Tem

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By David C. Lieb
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Department of Child Safety, Appellee*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which
Presiding Judge Andrew W. Gould and Judge Margaret H. Downie joined.

**G E M M I L L**, Judge:

¶1 Marissa H. ("Mother") appeals the juvenile court's order terminating her parental rights to her son, A.G., who was born in 2011. For the following reasons, we affirm.

## BACKGROUND

¶2 Mother and Antonio G. ("Father") are A.G.'s biological parents. Father's parental rights were terminated in July 2015, and he is not a party to this appeal. In December 2013, A.G.'s guardian ad litem filed a dependency petition, and A.G. was taken into temporary care by the Department of Child Safety ("DCS"). The petition alleged that Mother had abandoned A.G., failed to provide for his needs, and was abusing substances. DCS was unable to locate Mother at that time.

¶3 The evidence at the severance trial revealed that following A.G.'s birth, Mother and A.G. lived with Mother's maternal grandmother ("Grandmother") and grandfather. Mother then moved to live on her own in Phoenix from approximately March 2013 to March 2014, but A.G. stayed with Grandmother due to Mother's substance abuse issues. Mother was incarcerated from March 14, 2014 until May 23, 2014. On August 8, 2014, Mother moved to Iowa to live with her boyfriend, leaving A.G. with Grandmother. Mother left Grandmother no legal way to provide medical care for A.G. The ongoing case manager, Casey Shatto, was unable to contact Mother personally until Mother appeared telephonically at court in September 2014. On August 19, 2014, DCS filed a motion for termination of the parent-child relationship between Mother and A.G.

¶4 The juvenile court held a two-day, contested trial on the motion for termination. Shatto testified that A.G. saw his great-grandparents as his mother and father. Shatto also testified that Mother had only visited with A.G. five times in over a year,[1] and since moving to Iowa, Mother had only sent two cards and a total of $40 to A.G.[2] In her

---

[1] There were discrepancies in various reports regarding the dates of Mother's visits with A.G.

[2] Mother testified that Shatto was lying about how many times she had seen A.G. since moving to Iowa. Mother stated that she had seen A.G. twice since moving and had sent him seven cards along with presents for

testimony, Mother acknowledged that she did not believe that the $40 was a reasonable amount and that she believed it cost around $400 per month to raise a child. Mother also conceded that she did not believe she had a normal parental relationship with A.G. while in Iowa.

¶5        Mother testified that she did not know that DCS was involved with A.G. prior to August 2014.[3] She had asked for an Interstate Compact for the Placement of Children ("ICPC") agreement regarding A.G. while in Iowa, but this request was denied. Shatto testified that she wanted to see Mother fully participate in services and see A.G. on a regular basis before an ICPC would have been appropriate. Shatto was concerned because Mother was not trying to build a relationship with A.G. There was no regular contact with A.G. after Mother moved to Iowa, even though Grandmother was open to her talking with A.G. on the phone.[4] Mother stated that she wanted to establish herself in Iowa before moving A.G., so that it would be an easy transition.

¶6        Mother testified that she was not aware that Grandmother had alleged that she abandoned A.G. Mother also stated that she knew Grandmother had Arizona Health Care Cost Containment System coverage for medical care so she did not make legal arrangements for A.G. While in Iowa, Mother participated in services and obtained substance abuse treatment, but she did not complete services. Mother also testified that DCS did not offer to help arrange visits and never asked Mother to pay any money toward A.G.'s care.

¶7        The juvenile court found that DCS had proven by clear and convincing evidence the statutory ground of abandonment. The court also found by a preponderance of the evidence that termination was in the best interests of A.G. Mother timely appeals. We have jurisdiction in accordance with Arizona Revised Statutes ("A.R.S.") sections 8–235(A), 12–120.21(A)(1), and 12–2101(A)(1).

---

Christmas. Mother also testified that she had talked to A.G. four times on the phone through Grandmother while in Iowa and about once a month by video chat through other family members.

[3] Shatto testified that she did not believe that Mother was unaware of DCS's involvement.

[4] Mother testified that Grandmother would not answer her calls.

**DISCUSSION**

¶8        Although the right to the custody and control of one's child is a fundamental one, it is not absolute. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). To justify the termination of the parent-child relationship, the juvenile court must find at least one of the statutory grounds under A.R.S. § 8–533(B) by clear and convincing evidence. *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 18 (App. 2007). The juvenile court must also find by a preponderance of the evidence that termination of the parent-child relationship is in the best interests of the child. *Id.* We will not disturb the court's order terminating parental rights unless its factual findings are clearly erroneous and no reasonable evidence exists to support them. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 78–79, ¶ 9 (App. 2001).

¶9        Mother does not contest the juvenile court's conclusion that she abandoned A.G. Her only argument is that the juvenile court erred in terminating her parental rights because it did not make an express finding that DCS offered adequate reunification services or that such services would have been futile. Under A.R.S. § 8–533(B)(1), the juvenile court may terminate parental rights to a child if "the parent has abandoned the child." Unlike other statutory subsections defining grounds for terminating parental rights, § 8–533(B)(1) does not require that DCS provide "appropriate reunification services" before it seeks to terminate a parent's rights. *See Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 64, ¶¶ 7–9 (App. 1999). Moreover, "neither § 8–533 nor federal law requires that a parent be provided reunification services before the court may terminate the parent's rights on the ground of abandonment." *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 510, ¶ 11 (App. 2008) (citing *Toni W.*, 196 Ariz. at 64, ¶¶ 7–9).

¶10        A parent who has formed "no custodial, personal, or financial relationship with the child, under circumstances that meet the statutory ground of abandonment in A.R.S. § 8–533(B)(1)" is entitled to lesser constitutional protection. *Toni W.*, 196 Ariz. at 65-66, ¶ 14. Under A.R.S. § 8–201(1), "[f]ailure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." This record supports the finding that Mother failed to maintain a normal parental relationship with A.G. and abandoned him. Also, there is no requirement under the applicable statutes, rules, and case law that the juvenile court make a specific finding that DCS provided

4

"appropriate reunification services" or that it would have been futile to do so.[5]

## CONCLUSION

**¶11**        Applying the applicable standards of appellate review to the record in this case, we discern no abuse of discretion or legal error. We therefore affirm the juvenile court's termination of Mother's parental rights regarding A.G.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[5] Regarding the required determination that termination of parental rights be in the best interests of the child, Mother does not challenge the juvenile court's finding regarding best interests.